CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 15 2013

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | Crim. No. 7:92CR00135 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| JIMMY LAWRENCE NANCE, ) | By: Hon. James C. Turk |
|     Defendant. ) | Senior United States District Judge |

Jimmy Lawrence Nance ("Nance") was convicted by a jury of first-degree murder of a United States Postal Service employee, and is currently serving his life sentence in the custody of the Bureau of Prisons. His conviction became final on February 20, 1996, after his direct appeals were exhausted. See United States v. Nance, 516 U.S. 1136 (Feb. 20, 1996) (order denying petition for writ of certiorari).

On January 10, 2013, this Court entered an order denying a Nance's pro se motion to recuse without prejudice. ECF No. 256. In the order, the Court noted that Nance did not have any active cases or motions pending before this Court, but that Nance had a motion before the United States Court of Appeals for the Fourth Circuit in which he sought—yet again—permission to file a second or successive § 2255 motion. Thus, this Court denied the motion to recuse without prejudice to Nance's ability to seek the same relief at a later time.

Shortly thereafter, on January 25, 2013, the Fourth Circuit denied Nance's request to file a second or successive § 2255 motion and dismissed his appeal. ECF Nos. 261, 262. After this Court's January 10, 2013 Order and prior to the Fourth Circuit's dismissal, the Clerk received several additional motions from Nance, addressed herein. These include a motion to produce documents pursuant to 28 U.S.C. § 2250, ECF No. 258, and a Motion for Reconsideration

1

regarding this Court's prior Order of Recusal, ECF No. 259.[1] Nance also has filed a document that has been docketed as a "Request for Judicial Notice," ECF No. 260, which is addressed herein.

## I. PENDING MOTIONS

### A. Motion to Recuse

Before turning to the merits of Nance's recusal motion, the Court notes that much of the motion and attached affidavit, as well as his renewed motion, are devoted to factual background or legal grounds challenging his conviction or sentence. For example, he spends the first three pages of his affidavit describing the factual background of his allegation that the prosecution in this case failed to provide exculpatory Brady evidence in the form of "negative control tests," that the FBI repeatedly failed to respond to FOIA requests he filed seeking the negative control tests, and that the FBI first admitted that the negative control tests were missing in July 2009. He also claims, as he has previously and as the Court has addressed, that the United States Attorney's Office knowingly destroyed exculpatory DNA evidence. Additionally, he argues that the Court erred in allegedly failing to ensure he was appointed two attorneys, at least one of whom had capital case experience, and in allowing Nance to be convicted and sentenced under 18 U.S.C. § 1111 without requiring the Government to prove that the Crockett Post Office was a federal territory. See also ECF No. 259 (setting forth same basic argument). As discussed later in this Order, to the extent he is attempting to challenge his conviction or sentence, his motion is properly construed as a § 2255 motion and is dismissed as second or successive.

As to his alleged grounds for recusal, Nance makes a number of conclusory assertions, such as that the Court has engaged in a "20 plus year history of rulings that fly in the face of all

---

[1] On January 14, 2013, the Clerk received from Nance a document in which he requests that a page of his first recusal motion be replaced with a corrected page. ECF No. 257. The Court has considered the corrected page.

logic and find no support in law." ECF No. 255-1, ¶ 32. He accuses the Court of performing "legal gymnastics" in its legal rulings to "protect" the government's case, making "pro se prosecution rulings related to his case," and of basing its "decisions on personal feelings" instead of "remain[ing] detached and neutral." ECF No. 255-1, at 4. He then goes on to list a number of this Court's rulings and to explain why he believes they were erroneous or contrary to law. Id. at 4-9; see also ECF No. 259. He concludes that he is serving "a life sentence based on the failure of [the undersigned] to detach himself from the particulars of this case." ECF No. 255-1, at 10.

In his original recusal motion, Nance argued that the undersigned is disqualified from continuing to preside over his case pursuant to 28 U.S.C. § 455. ECF No. 255. Elsewhere in his motion, however, he makes arguments under both § 455 and 28 U.S.C. § 144. Id. at 7. Out of an abundance of caution, therefore, the Court will address both statutes.

Under § 144, a judge shall recuse himself in cases in which the party seeking recusal files a timely and sufficient affidavit stating the judge has a personal bias or prejudice against him. The affidavit must allege a personal bias from an extra-judicial source. See Sine v. Local 992 International Brotherhood of Teamsters, 882 F.2d 913, 914 (4th Cir. 1989). Under § 455, a judge should recuse himself "if a person with knowledge of the relevant facts might reasonably question his impartiality." United States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003).

Recently, the Fourth Circuit summarized federal recusal jurisprudence as follows:

> The upshot of these cases is clear: while recusal motions serve an important safeguard against truly egregious conduct, they cannot become a form of brushback pitch for litigants to hurl at judges who do not rule in their favor. If we were to "encourage strategic moves by a disgruntled party to remove a judge whose rulings the party dislikes," In re United States, 441 F.3d 44, 67 (1st Cir. 2006), we would make litigation even more time-consuming and costly than it is and do lasting damage to the independence and impartiality of the judiciary. In other words, recusal decisions "reflect not only the

3

>     need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." Id. (quoting In re Allied–Signal Inc., 891 F.2d 967, 970 (1st Cir. 1989)).

Belue v. Leventhal, 640 F.3d 567, 574 (4th Cir. 2011). The Belue Court also reiterated the well-established principle—also acknowledged by Nance, see ECF No. 255 at 13—that "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." 640 F.3d at 575 (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)). For the reasons set forth herein, the Court concludes that Nance has not shown or sufficiently alleged a personal bias from an extra-judicial source, as required under 28 U.S.C. § 144, nor is recusal warranted under 28 U.S.C. § 455.

It is true that the Court has often ruled against Nance and denied motions he has filed. But nothing in those rulings was the result of any personal bias or partiality against Nance and, to the extent the orders were appealed, they have been affirmed. Notably, moreover, aside from a very few unsupported allegations—including ones that are patently false[2]—Nance points to virtually nothing outside of this Court's rulings to support his claims of bias. For example, he claims that this Court showed "personal bias" against him because it granted a Certificate of Appealability in another, unrelated case, but "summarily denied" Nance a COA. ECF No. 255 at 9-10. Obviously,

---

[2] To illustrate, Nance claims that the undersigned "returned from retirement" to deny a motion filed by Nance, see ECF No. 255 at 8, but the undersigned has not retired and continues to be assigned criminal cases. Similarly, the Court is puzzled by Nance's suggestion that the Court "caused" his case to be moved from Abingdon to Roanoke so that it could be assigned to the undersigned and add to its "legacy" of "presid[ing] over every "high-profile" case in the Western District of Virginia. Judges of this district do not select cases to be assigned to them. With minimal exceptions (for example, when a case is related to a case the judge has previously handled), cases are randomly assigned per standing order. See W.D. Va. Gen. R. 2(d); see, e.g., In re: Division of Cases Among District Judges, Standing Order No. 2011-6 (W.D. Va. June 1, 2011) (current standing order regarding assignment of cases). The criminal indictment against Nance was properly returned in the Roanoke Division since the murder occurred in Wythe County, which is within the Roanoke Division of the Western District of Virginia. See W.D. Va. Gen. R. 2(a)(7); id. at 2(c).

this is not an extrajudicial source of bias, but one based on this Court's judicial rulings. Indeed, Nance's motion itself states that it is a review of this Court's <u>rulings</u> that demonstrates that recusal is required. See ECF No. 255 at 2. Thus, he is clearly basing his motion primarily, if not exclusively, on this Court's rulings.

The only possible exception is Nance's allegation that this Court has engaged in inappropriate ex parte communications with the AUSA and has "allowed" the prosecuting AUSA "to lie, cheat, withhold exculpatory evidence, [and] secretely [sic] destroy evidence that, using new technology, would exonorate [sic] petitioner." Id. at 8. The Court flatly denies that it has engaged in any improper ex parte communications with the government concerning Nance's case, and the allegation that it "allowed" the government to engage in the malfeasance alleged by Nance is, once again, based on this Court's rulings. Thus, this case falls comfortably in the category of cases where judicial rulings do not constitute a valid basis for recusal. Belue, 640 F.3d at 573.

While this Court has no personal objection to another judge ruling on motions filed by Nance, it also has an obligation not to recuse itself unless recusal is warranted. See Nichols v. Alley, 71 F.3d 347, 351 (10th Cir.1995) ("[A] judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require.") (citations omitted). In short, the Court has carefully considered Nance's recusal motion, but finds no basis for recusal in this case. If the Fourth Circuit disagrees and determines otherwise, the undersigned will happily recuse and allow Nance's case to be assigned to another judge of this Court. But the Court sees no valid basis for doing so and will not burden another judge of this Court unnecessarily nor allow the system to be strategically abused. Cf. Belue, 640 F.3d at 574. For the foregoing reasons, Nance's motion for recusal and motion to reconsider, ECF Nos. 255, 259, are DENIED.

Having determined that it may properly rule on motions filed by Nance, the Court turns to

the other pending motions.

### B. Motion for Production of Documents

In his Motion for Production of Documents, Nance requests that the Court enter an order under 28 U.S.C. § 2250, requiring the government to provide documents responsive to ten different requests. In addition to requesting "[c]omplete copies of all negative control tests performed by the FBI Laboratory and other Federal or independent agencies," he also includes nine other categories of documents. All nine appear related to his argument (raised in his motion to recuse and elsewhere) that this Court did not possess jurisdiction over the crime because the site of the murder, the Crockett Post Office, is allegedly not within the special maritime or territorial jurisdiction of the United States. See, e.g., ECF No. 255 at 4-6. Clearly, these discovery requests are aimed at supporting his attempts to challenge his conviction or sentence.

As a threshold matter, 28 U.S.C. § 2250 is inapplicable here. That statute allows a habeas petitioner who has been granted in forma pauperis status to obtain copies of court documents without cost, if a judge so orders. It does not permit discovery in the tradition sense. Nor is Nance's request proper under Rule 6 of the Rules Governing § 2255 Proceedings, which allows a court to order discovery for "good cause," in conjunction with a pending § 2255 motion.

Notably, although Nance's requests for discovery relate to challenges to his conviction or sentence, he does not have a pending § 2255 motion before this Court. Moreover, Nance repeatedly has been advised by this Court and by the Fourth Circuit, the only vehicle through which he may challenge his conviction or sentence is through a motion filed under 28 U.S.C. § 2255. He has repeatedly sought and been denied permission to file a second or successive § 2255 motion, and he has no active challenges to his conviction or sentence before the Court. For this reason, and for the reasons the Court has previously denied similar requests, see, e.g., ECF No.

177, he has not shown good cause for allowing discovery. See Rule 6, Rules Governing § 2255 Proceedings; see 28 U.S.C. § 2250.

Furthermore, even if there were some vehicle for discovery here, any argument that he needs the discovery in order to prove his legal claims is untenable. Indeed, the lack of "good cause" for allowing such discovery is evident when the Court examines the alleged merits of the claims to be supported by the discovery. The Court has previously considered and ruled on his claims concerning the destroyed DNA, see ECF Nos. 199, 200, that ruling has been affirmed by the Fourth Circuit, ECF No. 212, and the Court will not repeat its analysis here.

Likewise, Nance's jurisdictional argument related to 28 U.S.C. § 1111, upon which the other nine categories of discovery requests are based, rests on a mistaken understanding of the nature of his conviction. Specifically, Nance was indicted and convicted **not** for committing a murder within the special maritime and territorial jurisdiction of the United States, as referenced in 18 U.S.C. §1111(b), but for the first-degree murder of a U.S. employee engaged in the performance of official duties, in violation of 18 U.S.C. § 1111(a) (which simply defines first-degree murder) and § 1114. See ECF No. 85, PSR at 1 (setting forth statutes of conviction). Thus, this Court's jurisdiction is not premised upon territorial jurisdiction, but on the jurisdiction it has over specifically enumerated federal offenses. See, e.g., United States v. Peltier, 446 F.3d 911, 914 (8th Cir. 2006) ("§ 1114 criminalizes the killing of federal officers engaged in the performance of their official duties" and is "'a statute of general applicability' in which the situs of the crime [is] not an element.") (citations omitted); United States v. Adams, 581 F.2d 193, 200 (9th Cir.), cert. denied, 439 U.S. 1006 (1978) (rejecting as "frivolous" the defendant's argument that the murder of a postal employee was not a federal offense and expressly holding that 18 U.S.C. § 1114's reference to 18 U.S.C. § 1111, did not limit "federal jurisdiction over the murder of postal

employees to those occurring in the special maritime and territorial jurisdiction of the United States."). Put differently, it is irrelevant whether the Crockett Post Office is a "needful building," as described in 18 U.S.C. § 7(3). Even if it falls outside the territorial jurisdiction of the United States, this Court had jurisdiction over the offense. See 18 U.S.C. § 3231 (district courts "have original jurisdiction . . . of all offenses against the laws of the United States").

For like reasons, the location of the crime was neither an element to be proved in his case, nor a sentencing factor. Although § 1114 refers to § 1111, in that it provides a person who commits a murder in violation of § 1114 "shall be punished . . . as provided under section 1111," courts have routinely held that the reference to § 1111 is a reference only to the punishment provisions of § 1111(b), and does not incorporate any requirement that the murder be committed with "the special maritime and territorial jurisdiction of the United States." See, e.g., Peltier, 446 F.3d at 914 (§ 1114's reference to § 1111 "is intended to incorporate the punishment prescribed in § 1111(b), not its jurisdictional provision; the language in § 1114 cannot reasonably be taken to incorporate that portion of § 1111(b) that does not deal with punishment"); United States v. Brunson, 549 F.2d 348, 351 n.1 (5th Cir. 1977), abrogated on other grounds by United States v. Bengivenga, 845 F.2d 593 (5th Cir. 1988) ("§ 1114 incorporates only the penalty, and not the jurisdictional, provisions of § 1111 . . . [T]his conclusion makes it unnecessary to decide whether a post office is within the 'special maritime and territorial jurisdiction of the United States' . . . ."); Hinkson v. United States, 2012 WL 3776023, *14 (D. Idaho Aug. 28, 2012) (defendant's "attempt to graft the jurisdictional element from § 1111 . . . onto § 1114 is unavailing. Section 1114 incorporates only the penalties from" § 1111(b)).

Indeed, as explained by the Brunson court, to rule otherwise would mean that

> § 1114 would be limited not merely to murders of federal employees

> in the discharge of their duties, but to murders of such employees only when they are within the special maritime and territorial jurisdiction of the United States. Such a reading would mean that § 1114 would not cover, for instance, murders of mail carriers when they are on their routes . . . [and] [s]uch a reading . . . would be at odds with the long-established understanding of § 1114. E.g., United States v. Rivera, 513 F.2d 519, 521 n.1 (2d Cir)., cert. denied, 423 U.S. 948 (1975).

Brunson, 549 F.2d at 351 n.1. Nance's inquires and arguments to the contrary are simply unavailing. Thus, even if this Court allowed the discovery Nance seeks regarding the Crockett Post Office, and the facts are as Nance believes them to be, it would not be a ground for vacating his conviction or sentence. For all of these reasons, Nance's Motion for Production of Documents, ECF No. 258, is DENIED.

C. **Request for Judicial Notice**

The third and final filing to be addressed is Nance's document titled "Request for Judicial Notice," ECF No. 260, which Nance requests that the Court review carefully. Attached to his two-page "Request" are excerpts from a number of cases that appear to relate to two arguments he asserts in his motion to recuse, as well. Relying on the attached cases and, in particular, on Johnson v. United States, 860 F. Supp. 2d 663 (N.D. Iowa 2012), Nance contends that if this Court follows this "most important" case, then "petitioner is entitled to immediate release." ECF No. 260 at 1-2.[3]

In his first argument, Nance posits again that this Court either did not have jurisdiction over

---

[3] The Johnson decision is a lengthy one, spanning 256 pages in the Federal Supplement (Second) reporter. Although Nance has included an excerpt from that case, that excerpt merely contains one comment by the district judge that one of the lawyers he initially appointed to represent the defendant did not have capital experience. Nance does not provide a pinpoint citation to any discussion in the case of relief being granted on that ground, however. In fact, the court's decision there contains a lengthy footnote explaining that, to the judge's knowledge, 'there were no living, practicing attorneys in Iowa in 2000 with capital case experience." Id. at 685 n.5. The district judge later noted that he nonetheless appointed an attorney from Missouri who was "learned in the law applicable to capital cases." 18 U.S.C. § 3005. In light of all this, this Court is unclear as to why Nance believes this Court's following of the Johnson decision would entitle him to immediate release. It is unnecessary to address this argument in any event, because his claims for relief from his conviction or sentence are not properly before the Court.

his case because the murder was committed outside the "special maritime and territorial jurisdiction of the United States" or that it erred in not forcing government to prove that the crime was committed within the territorial jurisdiction of the United States.[4] Second, he appears to be arguing that his conviction should be vacated because this Court allegedly failed to ensure that at least one of his trial lawyers was "learned in capital cases."[5]

In determining the relief he is seeking in his "Request," the Court notes that Nance expressly contends he is entitled to immediate release. Additionally, both in his motion to recuse and in his "Request," he raises challenges to his conviction or sentence. He also posits that it is clear his "filings are factual, legally, and morally correct" and he requests the court to give "respect to this important filing and provide an answer to the questions only it can answer." ECF No. 260 at 2. The "Request" does not contain any explicit questions, but the Court presumes Nance is referring to the questions set forth in his motion to reconsider, ECF No. 259 at 3, all of which concern challenges to his conviction or sentence.

Having reviewed both the arguments in Nance's Motion to Recuse and, in particular, his Request for Judicial Notice, it appears to the Court that Nance continues to attempt to challenge his conviction therein and to seek relief from the criminal judgment against him. As Nance has repeatedly been advised, such a challenge is properly brought in a motion under 28 U.S.C. § 2255, since an attack on a federal criminal judgment, regardless of its label, is properly construed as a motion pursuant to 28 U.S.C. § 2255. See Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2010) (proper vehicle for a person convicted in federal court to challenge the validity of his judgment and

---

[4] As discussed in the section discussing Nance's requests for production, there is no merit in this contention, even if it were properly before the Court.

[5] The Court notes that the requirement that one counsel be learned in the law applicable to capital cases was not added to Section 3005 until the 1994 Amendments, which were effective September 13, 1994. Cf. United States v. Boone, 245 F.3d 352, 358-59 (4th Cir. 2001). At the time the amendment became effective, Nance had already been tried and sentenced by this Court. See ECF Nos. 83, 87.

sentence is a § 2255 motion). Because Nance's submission clearly challenges the criminal judgment against him, the Court construes it as a second or successive § 2255 motion. See United States v. Winestock, 340 F.3d 200, 207 (4th Cir. 2003) (applying principles to Rule 60(b) motion in § 2255 action and stating that "a motion directly attacking the prisoner's . . . sentence will usually amount to a successive application").

As Nance previously has been advised, this Court may consider a second or successive § 2255 motion only upon certification from the United States Court of Appeals for the Fourth Circuit that the claims in the motion meet certain criteria. See § 2255(h). While Nance continues to file motions challenging his conviction or sentence and continues to appeal the denial or dismissal of those motions, he has not obtained certification from the court of appeals to file a second or successive § 2255 motion. Accordingly, his motion, ECF No. 260, is hereby CONSTRUED as a Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255 motion. Because it is a second or successive motion that Nance has not obtained permission to file, it is summarily DISMISSED. The Court also DENIES a Certificate of Appealability, because it finds that Nance has not made the requisite showing of denial of a substantial right.

## II. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Nance's motions for production of documents and for recusal, ECF Nos. 255, 258, 259, are **DENIED**. It is further **ORDERED** that Nance's Request for Judicial Notice, ECF No. 260, is hereby **CONSTRUED** as a Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255. The Clerk is **DIRECTED** to redocket the motion as a § 2255 motion. Additionally, the § 2255 motion is hereby **DENIED** without prejudice as successive and should be **STRICKEN** from the active docket of the court. Finally, a Certificate of Appealability is **DENIED**.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to Nance and to counsel of record for the respondent.

ENTER: This 15th day of February, 2013.

／s／ James C. Turk
James C. Turk
Senior United States District Judge